UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DONTE ICE, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 1:19-cv-04751-JPH-MJD |
| | ) |
| SUPERINTENDENT, | ) |
| | ) |
| Respondent. | ) |

**ENTRY DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Donte Ice's petition for a writ of habeas corpus challenges his conviction in prison disciplinary case NCF 19-10-0006. For the reasons explained in this Entry, Mr. Ice's petition must be **denied**.

**I. Overview**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563–67 (1974).

1

## II. Disciplinary Proceeding

NCF 19-10-0006 began with the following conduct report, written by Investigator Christopher Sanford on October 1, 2019:

> On 8/15/19 a cell phone was confiscated from the B-2 upper bath room. The phone was taken into evidence at NCCF. The phone was sent off site to be downloaded. The data was returned to NCCF on 9/10/19. I (Correctional Police Officer Christopher Sanford) began analyzing the data. Ice #956949 has been in possession of the phone on multiple occasions. I have attached a picture of Ice #956949 that was found on the phone.

Dkt. 10-1.

The record includes two photographs of Mr. Ice. Dkt. 10-5. Mr. Ice does not dispute that he is seen in the pictures or that they were taken with the cell phone discussed in the conduct report.

The record also includes a photograph showing a cell phone next to an evidence record card. Dkt. 10-6. This card documents that phone was confiscated from the B-2 upper bathroom as described in the conduct report. *Id.*

A document that appears to be a call log from the cell phone shows messages to and from a phone number associated with Alisha Harvey. Dkts. 10-7, 10-8. Ms. Harvey appears on Mr. Ice's phone list. Dkt. 10-8. The call log indicates that Ms. Harvey's phone sent the message, "Call me," to the phone found in the bathroom at 3:31 A.M. on July 5, 2019. Dkt. 10-7. About two minutes later, the phone found in the bathroom responded, "OK love." *Id.*

On October 3, 2019, Mr. Ice received a screening report notifying him that he was charged with violating state law by possessing a cell phone in prison. Dkt. 10-9. Mr. Ice requested to review "phone calls or texts from this phone showing offender Ice had this phone in his possession." *Id.* There is no indication that he received any evidence beyond the call log discussed above.

Mr. Ice also obtained statements from three members of the prison staff. He asked Lieutenant Stephens where and when the phone was found. Lieutenant Stephens stated that he was

"present when the phone was discovered in the B-Unit Pod 2 upper restroom concealed inside a laundry bag. Ice was the only offender in the restroom the time the contraband was discovered." Dkt. 10-14. In response to the same question, Sergeant Patton—who completed the evidence record card—stated, "The phone was found in B-3 upper restroom." Dkt. 10-15. A third officer, Sergeant Gard, responded, "I did not find the phone it was found by someone else." Dkt. 10-16.

NCF 19-10-0006 proceeded to a hearing on October 17, 2019. Dkt. 10-13. According to the hearing officer's report, Mr. Ice made the following statement, seizing on the discrepancies between Lieutenant Stephens' and Sergeant Patton's witness statements:

> I never used this phone that was found, ever. They said I used this phone that was found, one said I was there, one said I was not, one said it was found in one pod, one said it was found in another.

*Id.*

The hearing officer reports considering several pieces of evidence, including the conduct report, Mr. Ice's statement, the pictures of Mr. Ice, the call log, Mr. Ice's visitor list, and the first page of the investigators' "extraction report."[1] *Id.* The hearing officer acknowledged the discrepancy between Lieutenant Stephens' and Sergeant Patton's witness statements but stated that it did not substantially impact Mr. Ice's ability to present a defense and, pursuant to Indiana Department of Correction policy, should not affect the outcome of the hearing. *Id.* The hearing officer explained:

> We find many phon[e]s, witnesses could be thinking of other phones, or the investigator could not have the correct pod. But evidence shows Offender Ice used this phone. He would have to have possession of it to use it. Guilty.

*Id.*

---

[1] The respondent has produced this document ex parte. Dkt. 11. It is not clear to the Court that any information in that document supports or undermines the case against Mr. Ice.

3

The hearing officer assessed sanctions, including a loss of earned credit time and a demotion in credit-earning class. *Id*. Mr. Ice's administrative appeals were unsuccessful. Dkts. 10-17, 10-18, 10-19.

### III. Analysis

Mr. Ice explicitly asserts three grounds for habeas relief: that his disciplinary conviction is not supported by evidence; that the hearing officer was not impartial; and that the hearing officer did not adequately explain the reasons for his decision and the sanctions imposed. He implicitly asserts a fourth ground for relief: that the prison staff failed to disclose exculpatory evidence. For the reasons discussed below, none of these grounds warrant relief so Mr. Ice's petition is denied.

**A.    Sufficiency of Evidence**

Mr. Ice first argues that "[t]here was no evidence to support the conclusion reached by the disciplinary hearing board other than the Petitioner's photo in another person phone." Dkt. 1 at 4. "[A] hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274. The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is *any evidence* in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455–56 (emphasis added); *see also Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted).

Multiple pieces of evidence support the conclusion that Mr. Ice possessed the phone. According to Lieutenant Stephens, Mr. Ice was the only person present when the phone was discovered. Dkt. 10-14. The call log shows that the phone was used to send messages to a person

4

on Mr. Ice's call list. Dkts. 10-7, 10-8. And the pictures of Mr. Ice show that he was present with the phone on two occasions. Dkt. 10-5.

Due process only requires *some evidence* to support a disciplinary conviction. Although there were discrepancies in the evidence, this Court may not "reweigh the evidence underlying the hearing officer's decision" or "look to see if other record evidence supports a contrary finding." *Rhoiney*, 723 F. App'x at 348 (citing *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000)). Multiple pieces of evidence supported the hearing officer's decision, and that is all due process requires.

**B.    Impartiality of Hearing Officer**

Mr. Ice alleges that he was denied the right to have his disciplinary case heard by an impartial decision-maker. *See Hill*, 472 U.S. at 454. "A 'sufficiently impartial' decision-maker is . . . necessary, in order to shield the prisoner from the arbitrary deprivation of his liberties." *White v. Ind. Parole Bd.,* 266 F.3d 759, 768 (7th Cir. 2001).

Hearing officers "are entitled to a presumption of honesty and integrity" absent clear evidence to the contrary. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003); *see Perotti v. Marberry*, 355 F. App'x 39, 43 (7th Cir. 2009) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). Moreover, the "the constitutional standard for impermissible bias is high," and hearing officers "are not deemed biased simply because they presided over a prisoner's previous disciplinary proceeding" or because they are employed on the prison staff. *Piggie*, 342 F.3d at 666. The presumption is overcome—and an inmate's right to an impartial decision-maker is breached—in rare cases, such as when the hearing officer has been "directly or substantially involved in the factual events underlying the disciplinary charges, or in the investigation thereof." *Id.* at 667.

5

Mr. Ice does not allege that the hearing officer was involved in discovering the investigation that followed. Instead, he asserts—without citing any factual basis—that the hearing officer "already had a rub[er] stamp decision made before the Petitioner ever came into the CAB hearing." Dkt. 1 at 4. Mr. Ice has not presented any evidence to overcome the presumption that the hearing officer was impartial.

**C.**     **Written Statement of Reasons**

Mr. Ice next argues that the hearing officer did not provide a written statement of the evidence he relied upon, the reason for the guilty verdict, or the reason he selected the specific sanctions assessed. Dkt. 1 at 4. "Due process requires that an inmate subject to disciplinary action is provided 'a written statement by the factfinders as to the evidence relied on and the reasons for the disciplinary actions.'" *Scruggs,* 485 F.3d at 941 (quoting *Forbes v. Trigg*, 976 F.2d 308, 318 (7th Cir. 1992)). The written-statement requirement is not "onerous," as the statement "need only illuminate the evidentiary basis and reasoning behind the decision." *Id.* The level of detail required in a hearing officer's written statement "'will vary from case to case depending on the severity of the charges and the complexity of the factual circumstances and proof offered by both sides.'" *Arce v. Ind. Parole Bd.*, 596 F. App'x 501, 503 (7th Cir. 2015) (quoting *Culbert v. Young*, 834 F.2d 624, 631 (7th Cir. 1987)). "[I]n a straightforward case . . . a very brief statement is sufficient." *Dullen v. McBride*, 27 F. App'x 607, 610 (7th Cir. 2001) (citing *Culbert*, 834 F.2d at 629–30).

Mr. Ice's argument that the hearing officer provided no statement of the evidence he considered or the reason for his decision is frivolous because the hearing officer's report states what evidence he considered and why he found Mr. Ice guilty. Dkt. 10-13. The hearing officer identified at least ten separate pieces of evidence that factored into the decision, listed the evidence he believed supported a guilty finding, and explained why he found that evidence convincing

6

despite Sergeant Patton's statement that the phone was found in a different location than the other evidence indicated. *Id.* This report illuminated the evidentiary basis and reasoning behind the hearing officer's decision. *Scruggs*, 485 F.3d at 941.

As to the sanctions imposed, the hearing officer indicated on the report form that he selected sanctions of 45 days' lost commissary and phone privileges, 180 days' lost earned credit time, and a credit-class demotion based on the seriousness and nature of the offense and the degree to which it disrupted or endangered prison security. Dkt. 10-13. Mr. Ice does not state why this explanation deprived him of due process. Moreover, these sanctions are standard for the offense of which Mr. Ice was convicted. Dkt. 10-20 at 38. "As there is no mystery about [the hearing officer's] reasoning process, despite the extreme brevity of [his] statement of reasons, that statement is not so deficient as to create error of constitutional magnitude." *Saenz v. Young*, 811 F.2d 1172, 1174 (7th Cir. 1987).

### D.     Failure to Disclose Evidence

Finally, Mr. Ice argues he was never informed "that there were multiple inmates" charged with possessing the phone found in the bathroom. Dkt. 1 at 4. The Court construes this as an argument that the prison staff failed to disclose evidence that would have aided Mr. Ice's defense.

Due process requires "prison officials to disclose all material exculpatory evidence," unless that evidence "would unduly threaten institutional concerns." *Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011). Evidence is exculpatory if it undermines or contradicts the finding of guilt, *see id.*, and it is material if disclosing it creates a "reasonable probability" of a different result, *Toliver v. McCaughtry*, 539 F.3d 766, 780–81 (7th Cir. 2008).

Here, another inmate's possession of the cell phone does not undermine or contradict the hearing officer's conclusion. Mr. Ice was convicted of possessing the phone—not owning it or

7

possessing it exclusively. While the photographs of Mr. Ice may have been taken by another person, dkt. 10-5, those pictures were referenced in the conduct report and presented to the hearing officer, dkts. 10-1, 10-13. The hearing officer knew that at least one other person possessed the phone at some point; there is no reason to believe that the hearing would have ended differently if Mr. Ice had been able to argue that point to the hearing officer.

### IV. Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff,* 418 U.S. at 558. Mr. Ice's petition does not identify any arbitrary action in any aspect of the charge, disciplinary proceeding, or sanctions that entitles him to the relief he seeks. Accordingly, Mr. Ice's petition for a writ of habeas corpus must be **denied** and the action **dismissed with prejudice.** Judgment consistent with this Entry shall now issue.

**SO ORDERED.**

Date: 5/17/2021

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

DONTE ICE
956949
MIAMI - CF
MIAMI CORRECTIONAL FACILITY
Inmate Mail/Parcels
3038 West 850 South
Bunker Hill, IN 46914-9810

Benjamin Myron Lane Jones
INDIANA ATTORNEY GENERAL
benjamin.jones@atg.in.gov